**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| FLEXSHOPPER, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO.  2:24-CV-00795-JRG |
| | § | (LEAD CASE) |
| KATAPULT HOLDINGS, INC., | § | |
| | § | |
| *Defendant.* | § | |

---

| | | |
|---|---|---|
| FLEXSHOPPER, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO.  2:24-CV-00794-JRG |
| | § | (MEMBER CASE) |
| UPBOUND  GROUP,  INC.,  ACIMA | § | |
| HOLDINGS,  LLC  d/b/a  ACIMA | § | |
| LEASING,  and  ACIMA  DIGITAL, LLC | § | |
| d/b/a ACIMA LEASING, | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Motion to Dismiss filed by Defendant Katapult Holdings, Inc.

("Katapult").  (Dkt. No. 58.[1])  Also before the Court is the Motion to Dismiss filed by Defendants

Upbound Group Inc., Acima Holdings, LLC d/b/a Acima Leasing, and Acima Digital, LLC d/b/a

Acima Leasing (together, "Acima") (collectively, with Katapult, the "Defendants").  (Dkt. No.

57.) In both Motions to Dismiss, Defendants move to dismiss the above-captioned cases under

Federal Rule of Civil Procedure 12(b)(6) on identical grounds.  (Dkt. No. 57 at 1; Dkt. No. 58 at

---

[1] Unless otherwise indicated, all Dkt. Nos. refer to documents filed in Lead Case No. 2:24-cv-00795-JRG.

1.)  Having considered the Motions to Dismiss, their related briefing, and for the reasons set forth

herein, the Court finds that the Motions to Dismiss (Dkt. No. 57; Dkt. No. 58) should be **DENIED**.

## I.      BACKGROUND

On January 09, 2025, Plaintiff FlexShopper, Inc. ("Flex") filed the First Amended

Complaint for Patent Infringement ("FAC") against Acima and the FAC against Katapult.  (Dkt.

No. 39; Dkt. No. 40.)  In the FACs, Plaintiff alleges that Defendants infringe five (5) patents: U.S.

Patent No. 10,089,682 (the "'682 Patent"); U.S. Patent No. 10,282,778 (the "'778 Patent"); U.S.

Patent No. 10,891,687 (the "'687 Patent"); U.S. Patent No. 11,966,969 (the "'969 Patent"); and

U.S. Patent No. 12,067,611 (the "'611 Patent") (collectively, the Asserted Patents").  (Dkt. No. 39

¶ 7; Dkt. No. 40 ¶ 7.)  Each of the Asserted Patents is related.  *See e.g.,* '969 Patent, Related U.S.

Application Data.  Generally, the Asserted Patents relate to "systems and methods for facilitating

a rent-to-own transaction" ("RTO") on an e-commerce website.  '682 Patent at Abstract; *see also*

*id.* at Col. 2, ln. 55.

## II.     LEGAL STANDARD

### A.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court can dismiss a complaint that fails

to state a claim upon which relief can be granted.  To survive dismissal at this early stage, a

complaint must state enough facts such that the claim to relief is plausible on its face.  *Thompson*

*v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads enough facts to allow the

Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts well-pled facts as true and views

all facts in the light most favorable to the plaintiff, but it is not required to accept the plaintiff's legal conclusions as true. *Id.*

### B. Patent Eligibility

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216–17 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent-ineligible subject matter and those that "integrate the building blocks into something more." *Id.*

The Court determines whether patent claims cover ineligible subject matter using a two-step analytical framework set out by the Supreme Court of the United States in *Alice.* 573 U.S. 208. At the first step, the Court evaluates whether the claims are directed to ineligible subject matter, such as an abstract idea. *Id.* at 217. To do so, the Court looks to the claims' "character as a whole." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Although all claims embody abstract ideas and other ineligible subject matter at some level, the Court's task is to examine "whether the claims [] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). In cases like this, the Court is to "consider the claim as a whole ... in light of the specification ... [and] whether the focus of the claims is on a specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Packet Intelligence LLC v. NetScout Sys., Inc.*,

965 F.3d 1299, 1309 (Fed. Cir. 2020) (quoting *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018)).

If the challenged claims recite a patent-ineligible concept, the Court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 573 U.S. 208, 217–18 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Accordingly, "factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019).

## III.   ANALYSIS

The Parties raise several disputes in the Motions to Dismiss and their related briefing. Specifically, the Parties disagree as to: (a) whether Claim 1 of the '682 Patent is representative of the asserted claims for patent-eligibility purposes; (b) whether the asserted claims fail *Alice* step

one (1); (c) whether the asserted claims fail *Alice* step two (2); and (d) whether claim construction is required to conduct a fulsome 35 U.S.C. § 101 analysis. (*See* Dkt. No. 57 at 6, 11, 25, 28.) However, the Court need not address representativeness, *Alice* step one, and whether claim construction is necessary at this stage because, ultimately, factual disputes exist as to whether Claim 1 satisfies *Alice* step two.

### A. *Alice* step two

Defendants argue that Claim 1 of the '682 Patent fails *Alice* step two as it is directed to the abstract idea of "facilitating an RTO transaction" with "generic computer components." (Dkt. No. 57 at 25; Dkt. No. 58 at 25.) Defendants advance their argument on three (3) separate grounds. (Dkt. No. 57 at 26.) First, Defendants contend that using a plug-in to complete "an old business method (RTO transactions)" was conventional. (*Id*. at 26–27.) Defendants note that the '682 Patent provides, and the U.S. Patent & Trademark Office (the "Office") found, that plug-ins were commonly available for a variety of transactions on e-commerce websites. (*Id*. at 26.) Second, Defendants assert that the use of an intermediary (the e-commerce server/website with an RTO plug-in) to facilitate an RTO transaction cannot supply an inventive concept as it is an abstract idea. (*Id*. at 27 (citations omitted).) Finally, Defendants maintain that the implementation of Claim 1 has no change on the normal operation of a computer or computer network. (*Id*. at 27–28.) According to Defendants, "Claim 1 merely recites the application of a known business practice … to the particular environment of e-commerce." (*Id*. at 28.)

Flex argues in response that the asserted claims have an inventive concept through their ordered combination of elements. (Dkt. No. 69 at 24–26.) Specifically, Flex asserts that the claims solve a technological problem ("retaining customers on an e-commerce website during a complex multiparty online transaction") by "allowing a customer 'to be in two places at the same time' on

the Internet." (*Id*. at 24–25 (citing *DDR Holdings, LLC v. Hotels.com LP*, 773 F.3d 1245, 1248 (Fed. Cir. 2014)).) Flex supports its assertation by noting that, during prosecution, the Office found that the '682 Patent claimed a patent-eligible solution "'necessarily rooted in computer technology in order to overcome a problem with computer networks.'" (*Id*. at 25 (citations omitted).) Additionally, Flex argues that Defendants "ignore the actual claim language," as none of the asserted claims broadly recite using a "plug in" and "intermediaries." (*Id*. at 26.)

Taking the FAC's well-pled allegations as true, Plaintiff has plausibly pled that Claim 1's ordered combination of elements have an inventive concept despite the individual elements being well-known. *See PPS Data, LLC v. Jack Henry & Associates, Inc.*, 404 F.Supp.3d 1021, 1039–40 (E.D. Tex. Sep. 6, 2019) (citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016)). In an example, the FAC pleads that e-commerce merchants would lose control of online customers during RTO transactions as those customers would be "redirect[ed] … to a third party financial services entity for RTO services" prior to the Asserted Patents. (Dkt. No. 39 ¶ 37; *see also DDR Holdings*, 773 F.3d at 1258 ("It is this challenge of retaining control over the attention of the customer in the context of the Internet that the … claims address").) Flex also alleges that the implementation of Claim 1 solves this problem by completing RTO transactions through e-commerce websites, obviating the need for redirection. (Dkt. No. 39 ¶ 37.) Further, the FAC identifies several of Claim 1's elements that, when combined, facilitate online RTO transactions in such a way. (*Id*. ¶¶ 37–38.) Specifically, Flex points to: an "RTO plug-in integrated with the e-commerce application;" an "RTO control element in the e-commerce user interface associated with [a] good;" and "one or more … RTO user interface[s]." (*Id*. ¶¶ 37–38.) At this stage of the proceedings, the Court takes these facts to be true. *Iqbal*, 556 U.S. at 678.

Thus, and at a minimum, factual disputes exist as to whether Claim 1 of the '682 Patent meets *Alice* step two. *See Cellspin Soft, Inc.*, 927 F.3d at 1318.

To be sure, Defendants have not overcome these well-plead facts. Defendants' arguments are directed to individual elements such as the RTO plug-in, not the ordered combination of elements. (*See* Dkt. No. 57 at 26–27.) Defendants also dispute whether Claim 1 induces a change in the normal operation of a computer network, but such a factual dispute is more appropriately raised at a later stage in the case. (Dkt. No. 57 at 27–28.)

Accordingly, the Court finds that dismissal at this early stage of the proceedings is not justified.

## IV.    CONCLUSION

For the reasons stated above, the Court finds that the Motions to Dismiss (Dkt. No. 57; Dkt. No. 58) should be and hereby are **DENIED**.

**So ORDERED and SIGNED this 19th day of August, 2025.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE